IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **WEINFUSE, LLC**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:20-CV-1050-L** |
| | § | |
| **INFUSEFLOW, LLC, GUSTAVO "GUS"** | § | |
| **DE AVILLEZ, AND REIN HEALTH** | § | |
| **HOLDINGS, LLC,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants InfuseFlow, LLC and Gustavo "Gus" De Avillez's Motion to Dismiss Plaintiff WeInfuse, LLC's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion") (Doc. 15), filed July 2, 2020; Defendants InfuseFlow, LLC and Gustavo "Gus" De Avillez's Motion to Dismiss Plaintiff WeInfuse, LLC's State Court Causes of Action in Its Original Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) (Doc. 16), filed July 2, 2020; Rein Health Holdings, LLC's Motion Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Joinder to the Other Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 32), filed December 4, 2020; and Rein Health Holdings, LLC's Motion Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and Joinder to the Other Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) (Doc. 33), filed December 4, 2020. After considering the Motions, briefs, pleadings, and applicable law, the court, for the reasons herein explained, **grants in part and denies in part** Defendants InfuseFlow, LLC and Gustavo "Gus" De Avillez's Motions to Dismiss (Doc. 15 and 16); **grants** Plaintiff's Motion to Seal (Doc. 11); **denies** as moot Defendants' Motion to Strike (Doc. 13);

**denies** Rein's Motions to Dismiss (Docs. 32 and 33); and **declines** to dismiss Plaintiff's state law claims, except those as herein determined.

## I.        Factual and Procedural Background

On April 28, 2020, WeInfuse, LLC ("Plaintiff" or "WeInfuse") filed its Original Complaint (Doc. 1) against InfuseFlow, LLC and Gustavo "Gus" De Avillez (collectively, "Defendants InfuseFlow and Mr. De Avillez"). Plaintiff asserted claims pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"), including various state law claims. On June 11, 2020, WeInfuse filed a First Amended Complaint ("Amended Complaint") and Motion to Seal First Amended Complaint (Doc. 11) pursuant to the DTSA, Copyright Act, 17 U.S.C. § 101, and state law claims for tortious interference. In the Amended Complaint, Plaintiff's asserted eight claims as follows: Count 1—misappropriation of trade secrets (against all Defendants); Count 2—copyright infringement (against all Defendants); Count 3—vicarious copyright infringement (against Defendant Rein Health Holdings, LLC ("Rein")); Count 4—tortious interference with existing contracts (against Infuseflow and Mr. De Avillez); Count 5—tortious interference with prospective business relations (against InfuseFlow and Mr. De Avillez); Count 6—breach of contract (against Rein); Count 7—breach of contract (against Rein); and Count 8—attorney's fees (against all Defendants).

Plaintiff moved to seal its Amended Complaint to protect its confidential and/or trade secret material described therein as well as information marked confidential by Defendants in a related state-court action. There was significant contention between the parties concerning Plaintiff's First Amended Complaint. After much to-and-fro, the parties reached a Stipulation (Doc. 30) on November 2, 2020. The parties agree that the First Amended Complaint as redacted (Doc. 31) is to be filed for public disclosure and that all motions to dismiss remain before the court.

Accordingly, the court orders that the Amended Complaint (Doc. 11) remain **filed under seal** because it states the entirety of Plaintiff's claims, allows the court to see all statements made in support of Plaintiff's claims and, at the same time, shields the confidential information from public disclosure.

In Defendants' Motion to Dismiss for Failure to State a Claim, InfuseFlow and Mr. De Avillez seek dismissal of Plaintiff's claims for trade secret misappropriation (Count 1); copyright infringement (Count 2); tortious interference with existing contract and prospective business relations (Counts 4 and 5); and attorney's fees (Count 8). Defendants contend that these claims by Plaintiff should be dismissed because: (1) Plaintiff has no trade secret; (2) Defendants did not misappropriate Plaintiff's trade secret; (3) Plaintiff does not have a valid copyright; (4) Plaintiff's common law tortious interference claims are preempted by the Copyright Act; (5) Plaintiff's common law tortious interference claims are preempted by the Texas Uniform Trade Secrets Act ("TUTSA"); and (5) there was no tortious interference in either existing contracts or prospective business relationships. Defendants further contend that Plaintiff's claim for attorney's fees should be denied because they are insufficiently pleaded.

Plaintiff responds that its claims satisfy Federal Rule of Civil Procedure 8's pleading standard. It contends that: (1) its Software is a protectable trade secret; (2) Defendants misappropriated its Software; (3) its copyright is valid and was infringed upon by Defendants; (4) its state law tortious interference claims are not preempted by the Copyright Act; (5) its state law tortious interference claims are not preempted by TUTSA; and (5) Defendants tortiously interfered with existing and prospective contracts. Plaintiff also maintains that it has sufficiently stated a claim for attorney's fees and, in a footnote, requests that it be granted the opportunity to amend its pleadings should the court find them to be defective.

**Memorandum Opinion and Order – Page 3**

Defendants reply that Plaintiff's request for leave to amend should be denied because of its lack of particularity regarding the grounds on which it seeks to amend. They maintain that Plaintiff has not cured the defects in its trade secret, copyright, and tortious interference claims. They also maintain that Plaintiff's tortious interference claims are preempted by TUTSA and the Copyright Act.

## II.      Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or

legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).

The court does not evaluate the plaintiff's likelihood of success; instead, it only determines

whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St.*

*Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court

deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in

the pleadings to determine whether they are adequate enough to state a claim upon which relief

can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro*

*Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th

Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a

plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6)

challenge. *Adams*, 556 F.2d at 293.

## III.   Plaintiff's Federal Claims and Federal Preemption

### A.   Trade Secret Misappropriation

#### 1.   Applicable Law

Plaintiffs' statutory trade secret misappropriation claim under federal law is governed by

DTSA. DTSA defines "[t]rade secret" as:

> all forms and types of information, including business, scientific, technical,
> economic, or engineering information, and any formula, design, prototype, pattern,
> plan, compilation, program device, program, code, device, method, technique,
> process, procedure, financial data, or list of actual or potential customers or
> suppliers, whether tangible or intangible and whether or how stored, compiled, or
> memorialized physically, electronically, graphically, photographically, or in
> writing if:
>
> > (A) the owner of the trade secret has taken reasonable measures under the
> > circumstances to keep the information secret; and
> >
> > (B) the information derives independent economic value, actual or
> > potential, from not being generally known to, and not being readily

ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).

The DTSA defines "[m]isappropriation" as:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who:

>   (i) used improper means to acquire knowledge of the trade secret;

>   (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

>>    (a) derived from or through a person who used improper means to acquire the trade secret;

>>    (b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

>>    (c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret; or

>   (iii) before a material change of the position of the person, knew or had reason to know that the trade secret was a trade secret and that knowledge of the trade secret had been acquired by accident or mistake.

Id. § 1839(5).

### 2.    Analysis

The court agrees with Defendants that Plaintiff's claims are not sufficiently pleaded for the reasons urged in their Motion and reply brief. In particular, WeInfuse has not sufficiently alleged facts to show that its web-based software application ("Software") is a trade secret. With the goal of "creat[ing] an end-to-end software application that would save customers time, remove daily

inefficiencies, and reduce overall costs," WeInfuse developed a software application "designed to provide an online, paperless tool capable of centralizing and streamlining all aspects of infusion center management." Pl.'s Am. Compl., Doc. 31 at 4, ¶ 13. WeInfuse requires its customers to sign a licensing agreement to gain access to the Software that is maintained behind a protected login. *Id.* at 4-5, ¶ 14. It contends that "every aspect" of the "Software architecture" behind the protected login is a trade secret—"its functionalities, user interface and display and design, interworkings of various components and modules, logic flows, databases, and schema." *Id.* It also offers a list of the following features contained within the Software, on its user interface: Patient Management; Patient Log; Provider Order and Document Intake; Provider Order Structure; Patient Flow; Pre-Treatment Workflow Tracking Buckets; Verifications; Authorizations; Referrals; Clinical Review; Financial Review; Inventory Distribution; Appointment Eligibility; Appointment Scheduler; Treatment Notes; Inventory Management; Payer Management; Billing; and Reporting. *Id.* at 5, ¶ 15.  These "features and functionalities," according to Plaintiff, form the basis of their claim. *Id.* at 14, ¶ 42 The court determines that these descriptions and offerings are far too broad to qualify as trade secrets. Plaintiff fails to point to specificities that convey the unique capabilities of the Software. *See GlobeRanger Corp. v. Software AG U.S., Inc.,* 836 F.3d 477, 492 (5th Cir. 2016). Without any indication of such special characteristics, the court cannot reasonably infer that the Software's features and functionalities as described by Plaintiff are not generally known within the industry or readily ascertainable through proper means.

Further, Defendants contend that Plaintiff has not set forth sufficient allegations that it has taken reasonable measures to preserve the secrecy of the Software's architecture. In its Amended Complaint, WeInfuse alleges that it was in the process of pitching the Software to a potential customer when WeInfuse learned, from the potential customer, that InfuseFlow had a competing

product. Pl.'s Am. Compl., Doc. 31 at 12, ¶ 35. WeInfuse did not indicate taking any protective measures when pitching to the potential customer who, like Defendants, could also have been a potential competitor. Instead, WeInfuse openly demonstrated features that it now alleges are critical to its claim for misappropriation of trade secrets. The ease with which the Software's features and functionalities could be duplicated after a demonstration would have made confidentiality measures for potential customers reasonable. As a result, Defendants contend that reasonable measures were not taken to preserve the secrecy of the Software's features and, thus, they are not trade secrets. Def.'s Mot. Dismiss Doc. 15 at 11, ¶ 36.  The court agrees.

In describing how it protects its confidential and proprietary trade secret software, WeInfuse lays out the following protocols:

- Developers of the Software are required to sign non-disclosure agreements before they are allowed to access or write any code related to the Software;
- WeInfuse maintains its encrypted proprietary source code in protected repositories;
- Other WeInfuse employees are required to maintain confidentiality of information related to the Software and are provided such information on a need-to-know basis;
- WeInfuse employees are required to sign non-competition and non-solicitation agreements;
- Customers licensing the Software are required to sign a WeInfuse software agreement before gaining access to the Software, acknowledging the confidential and proprietary nature of the Software and agreeing to protect it;
- Among the various restrictions, WeInfuse's software agreement includes confidentiality and non-copying provisions and prohibits use, alteration, modification, reverse engineering, dissemination, creation of a derivative work of WeInfuse, and other attempts to discover the proprietary and confidential information in WeInfuse's Software.

Pl.'s Am. Compl., Doc. 31 at 6-7, ¶ 19. WeInfuse also alleges, however, that it pitched the Software at trade shows. *Id.* at 10, ¶ 29-30. Plaintiff's lack of confidentiality measures for prospective clients is notable. If the Software was being marketed to outsiders with no confidentiality restrictions in place, reasonable measures were not taken to guard the

**Memorandum Opinion and Order – Page 9**

secrecy of the Software against persons and entities who could obtain economic value from use of the information and the Software did not derive economic value from its features not being generally known. Given WeInfuse's factual allegations, the existence of a trade secret is implausible.

As WeInfuse fails to set forth sufficient allegations for the court to reasonably infer that Defendants can be liable for trade secret misappropriation, it has failed to state a claim upon which relief can be granted. Accordingly, the court will dismiss Plaintiff's claim for trade secret misappropriation.

### B.    Copyright Infringement

#### 1.    Applicable Law

For direct copyright infringement, a plaintiff must set forth allegations to show that "(1) [it] owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012) (quoting *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)).

The first element, ownership, is satisfied by allegations that the work is original and can be copyrighted and that the plaintiff has complied with all statutory formalities. *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994). "[A] plaintiff has complied with all statutory formalities for copyright registration [and ownership] when the Copyright office receives the plaintiff's application for registration, fee, and deposit." *See Geoscan, Inc. of Texas v. Geotrace Techs., Inc.*, 226 F.3d 387, 393 (5th Cir. 2000) (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991)). The term "deposit" refers to the material deposited

for registration or number of copies of the work that are required by statute to be submitted. *See Geoscan, Inc.*, 226 F.3d at 393 (citing 17 U.S.C. § 408(b)).

The copying element is met by: "(1) factual copying and (2) substantial similarity." *Baisden*, 693 F.3d at 499 (quotation marks omitted). Factual copying may be based on direct or circumstantial evidence. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). To be substantially similar, "the copyrighted expressions in the two works [must be] sufficiently alike that the copyright to the original work has been infringed." *Id.* In other words, from the prospective of a "layman" or "ordinary observer," "the copy must bear a substantial similarity to the protected aspects of the original." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 550 (5th Cir. 2015) (quoting *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001)).

## 2.    Analysis

WeInfuse alleges that its Software is an original work of authorship containing copyrightable material for which copyright protection exists under the Copyright Act. Pl.'s Am. Compl., Doc. 11 at 17, ¶ 60. To qualify for copyright protection, a work must be original to the author. *Feist Pub., Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 345 (1991). Further, copyright protection does not extend to items taken from the public domain. *General Universal Sys., Inc. v. Lee*, 379 F.3d 131, 143 (5th Cir. 2004). WeInfuse alleges that its developers used, not only its customers' feedback, but feedback from third-party infusion centers' customers to create the Software. Pl.'s Am. Compl., Doc. 31 at 5-6, ¶ 17. Defendants argue that, as a result of such extensive use of knowledge from the public domain, the Software does not meet the originality requirement and, thus, is not subject to copyright protection. Def.'s Mot. Dismiss, Doc. 15 at 16, ¶ 48.  The court agrees.

WeInfuse's Software was developed using a broadly acquired set of knowledge, from processes and procedures discovered by WeInfuse's principals while working for other companies in the infusion industry to feedback from remote customers. Pl.'s Am. Compl., Doc. 31 at 4, ¶ 12. WeInfuse alleges that its features could not be replicated without a similar investment of the significant time, effort, and money it expended to develop the Software. *Id.* at 5-6, ¶ 17. While this may be true, WeInfuse fails to allege that its features were not, ultimately, products of the public domain, or any other allegation for the court to reasonably infer that its features were not products of the public domain. Without meeting the originality requirement, WeInfuse can establish neither ownership nor copying of the Software.

As WeInfuse fails to set forth sufficient allegations for the court to reasonably infer that Defendants can be liable for copyright infringement, it has failed to state a claim upon which relief can be granted. Accordingly, the court will dismiss this claim for copyright infringement.

### C.       Copyright Act Preemption of Tortious Interference Claims

#### 1.       Applicable Law

"**[S]**tate law claims based on ideas fixed in tangible media are preempted by 301(a)." *Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586, 597 (5th Cir. 2015). The Fifth Circuit has established a two-part test to determine whether a state law claim is preempted by the Copyright Act.

> First, the claim is examined to determine whether it falls "within the subject matter of copyright" as defined by 17 U.S.C. § 102. And second, "the cause of action is examined to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106."

*Id.*

#### 2.       Analysis

First, that WeInfuse's tortious interference claims are based on Software features and functionalities fixed in the internet automatically triggers their preemption as they fall within the

**Memorandum Opinion and Order – Page 12**

subject matter of copyright. The Software is a graphic work of authorship and the internet is a tangible medium of expression. Second, WeInfuse's tortious interference claims are based on the lost benefits of exclusive rights to that Software. WeInfuse contends that the Software's licensing agreement prohibited existing customers from "creating a derivative work." Pl.'s Am. Compl., Doc. 31 at 19, ¶ 72. WeInfuse further contends that Defendants induced an existing client (Rein) to breach that Agreement so that Defendants could obtain access to the Software, develop a derivative work, and target WeInfuse's prospective clients . *Id.* at 19, ¶ 73. In claiming tortious interference, WeInfuse is seeking the exclusive right to prepare derivative works based upon the Software in order to maintain its exclusive place in the market. As a result, the court finds that WeInfuse's state law claims fall squarely within the exclusive rights provided by 17 U.S.C. § 106 and are preempted by the Copyright Act. Alleging that Defendants were provided unauthorized access to the Software and, subsequently, used information derived from that unauthorized access to compete against WeInfuse is equivalent to alleging that Defendants prepared and reproduced derivative work.

The court, having decided that all of WeInfuse's tortious interference claims are preempted by the Copyright Act, need not address whether WeInfuse has sufficiently pleaded its tortious interference claims. As WeInfuse's state law claims for tortious interference with existing contracts and prospective business relations are preempted by the Copyright Act, it has failed to state claims upon which relief can be granted. Accordingly, the court will dismiss WeInfuse's state law claims for tortious interference with existing contracts and prospective business relations.

**Memorandum Opinion and Order – Page 13**

IV.     **Plaintiff's State Claims and State Preemption**

      A.     **TUTSA Preemption of Tortious Interference Claims**

            1.     **Applicable Law**

TUTSA's preemption section provides:

> (a) Except as provided by Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (b) This chapter does not affect:
>
> > (1) contractual remedies, whether or not based upon misappropriation of a trade secret;
> >
> > (2) other civil remedies that are not based upon misappropriation of a trade secret; or
> > (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

Tex. Civ. Prac. & Rem. Code § 134A.

The court could find no case in which the Fifth Circuit Court of Appeals has addressed

whether TUTSA preempts tortious interference claims. Although,

> the Fifth Circuit Court of Appeals has not addressed the scope of TUTSA's preemption provision, district courts in this circuit have found that to the extent a plaintiff's tort claim is premised on the same facts as its claim for misappropriation, it is preempted. *See*, e.g., *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC,* [426 F. Supp. 3d 311, 333 (E.D. Tex. 2019)]; *ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680, 686 (W.D. Tex. 2019) (breach-of-fiduciary-duty claim is preempted only insofar as it relies on allegations that defendants misappropriated trade secrets); *360 Mortgage Group, LLC v. Homebridge Financial Servs., Inc.*, No. A-14-CA-847-SS, 2016 WL 900577, at *6-8 (W.D. Tex. March 2, 2016). They found that TUTSA was intended to preempt all claims based on misappropriation of a trade secret, and to allow multiple theories of relief for the same underlying harm would be to read the preemption provision too narrowly. *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018). A claim will not be preempted if the plaintiff can show that the claim is based on facts unrelated to the misappropriation of the trade secret. *360 Mortg. Grp.*, 2016 WL 900577, at *6.

**Memorandum Opinion and Order – Page 14**

*Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*, No. 3:19-CV-970-X(BH), 2020 WL 2487057, at *6-7 (N.D. Tex. Feb. 7, 2020), <u>report and recommendation adopted,</u> No. 3:19-CV-00970-X, 2020 WL 1428941 (N.D. Tex. Mar. 24, 2020).

        2.        **Analysis**

In WeInfuse's allegation of its claim for misappropriation of trade secrets under DTSA and TUTSA in the Amended Complaint, it asserts that "as a direct and proximate result of Defendants' conduct, WeInfuse has suffered and continues to suffer the disruption of its business relationships and the loss of clients and potential clients, misappropriation of its trade secrets, and devaluation of its trade secrets and business." Pl.'s Am. Compl., Doc. 31 at 17, ¶ 55. Subsequently, in its allegations for tortious interference with an existing contract and prospective business relations, WeInfuse incorporates all allegations in the preceding paragraphs as context for the claims of tortious interference that follow. *Id.* at 19, ¶ 71; 21, ¶ 76. Weinfuse's tort claims are, therefore, premised on the same facts as its claim for misappropriation of trade secrets. This attempt to use multiple theories of relief for the same underlying harm is the type of maneuvering that the preemption provision is designed to prevent. *Embarcadero Techs.*, 2018 WL 315753 at *3.

In its Response to Defendant's Motion, WeInfuse argues that recovery should be permitted because, even if the information is not a trade secret, it is still confidential. Pl.'s Resp. 21. WeInfuse alleges that by Defendants persuading a customer to give unauthorized access to its Software and, then, directly targeting one of WeInfuse's potential clients, Defendants induced breach of contract and used WeInfuse's confidential information to enter the infusion center market and compete against WeInfuse. *Id.* at 19. WeInfuse contends that these are independently tortious acts. The court disagrees.

The focus of preemption is not whether some other recognized tort duty can be identified, but whether the facts relied on to support that tort duty differ from those facts supporting the TUTSA claim. *StoneCoat of Texas*, 426 F. Supp. 3d at 333-34. In this case, they do not. Defendants' alleged unauthorized use of confidential information, whether the Software's features or the protected login, is the factual allegation relied on to support the breach of contract claim. It is also the factual allegation relied on to support the trade secret claims. WeInfuse's tortious interference claims are, therefore, wholly preempted by TUTSA.

As WeInfuse's state law claims for tortious interference with existing contracts and prospective business relations are preempted by TUTSA, it has failed to state claims upon which relief can be granted under Texas common law. Accordingly, the court will dismiss WeInfuse's state common law claims for tortious interference with existing contracts and prospective business relations.

## V.      Plaintiff's Claims against Rein

Rein has filed two motions to dismiss (Docs. 32 and Doc. 33). These are three-page motions that purport to incorporate and adopt arguments pursuant to Federal Rule of Civil Procedure 10(c) made by Defendants InfuseFlow and Mr. De Avillez. Rein's reliance on this rule is misplaced. The rule provides as follows: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Id.*

InfuseFlow and Mr. De Avillez made no reference to Plaintiff's allegations that pertain to Rein, as they only asserted arguments and defenses on behalf of themselves. Thus, it is impossible to adopt, by reference or otherwise, allegations made regarding a separate defendant when no arguments or grounds for dismissal are made as to such defendant. Additionally, InfuseFlow and

Mr. De Avillez's motions should not have made any references to Rein, as InfuseFlow and Mr. De Avillez's lawyers are not representing Rein. It is incumbent upon Rein to state with specificity why the allegations in the Amended Complaint are insufficient to state claims upon which relief can be granted against it pursuant to Rule 12(b)(6) and why this court should not retain jurisdiction of Plaintiff's state law claims pursuant to Rule 12(b)(1). The court does not believe that Rule 10(c) is designed to allow a party to adopt wholesale another party's briefs and arguments to support the dismissal of claims without explaining sufficiently why the other party's argument and defenses equally apply to it. For these reasons, the court will deny Rein's motions to dismiss.

## VI.    Supplemental Jurisdiction

Infuseflow and Mr. De Avillez request that the court dismiss all state law claims if no federal law claims remain. The only state law claims against these two Defendants are Plaintiff's claims for tortious interference with existing contracts and prospective business relations under TUTSA. WeInfuse's state law claims for breach of contract against Rein also remain. Pursuant to 28 U.S.C. § 1367, the court has supplemental jurisdiction over Plaintiff's remaining state law claims. Because the court has dismissed the federal claims over which it had subject-matter jurisdiction, the court must decide whether to retain jurisdiction over the remaining state law claims.

Supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims after all federal law claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Section 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition, other factors a court is to consider in determining whether to exercise supplemental jurisdiction over a state law claim include judicial economy, convenience, fairness, and comity. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011) (citing *Carnegie–Mellon*, 484 U.S. at 350 and referring to "judicial economy, convenience, fairness, and comity[ ]" as the "common law factors").

As the court will deny Rein's two motions to dismiss, all federal claims have not been dismissed at this stage. Thus, it is improper for the court to dismiss without prejudice pending state law claims because there are federal law claims that remain.

## VII.    Attorney's Fees

Both parties have requested attorney's fees. The court determines the issue of attorney's fees will be decided pursuant to Federal Rules of Civil Procedure 54(d)(2) upon a party establishing that it qualifies as a prevailing party. Thus, any request for attorney's fees will be handled postjudgment as allowed under this rule.

## VIII.   Plaintiff's "Request" for Leave to Amend Pleadings

At best, Plaintiff made a passing or oblique reference to possibly amending its pleadings. In a footnote, Plaintiff states, "For all of the reasons explained in this brief, Defendants' motion should be denied and this case should proceed forward. However, if the Court determines that there is any defect in WeInfuse's pleading, WeInfuse respectfully requests the opportunity to amend such pleading to cure any arguable defect." Pl.'s Resp. 25 n.3.

**Memorandum Opinion and Order – Page 18**

Regarding amendment of pleadings, the Fifth Circuit has explained:

A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals. Rule 15(a) applies where plaintiffs "expressly requested" to amend even though their request "was not contained in a properly captioned motion paper." A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought. "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, . . . does not constitute a motion within the contemplation of Rule 15(a)."

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc*., 336 F.3d 375, 387 (5th Cir. 2003) (citations omitted).  The court in *United States ex rel. Willard* concluded that that the district court did not abuse its discretion in refusing to allow the plaintiff to amend his complaint because, among other reasons, he "did not expressly request with particularity the opportunity to amend his complaint." *Id.*

Like the plaintiff in *United States ex rel. Willard*, the short footnote on the last page of WeInfuse's response did not "expressly request that [he] be given leave to amend and d[id] not provide any indication of the grounds on which such an amendment should be permitted." *Id.* Additionally, WeInfuse has had ample opportunity to perfect its pleadings. It filed an Original Complaint and a First Amended Complaint in this court. Moreover, Plaintiff repeatedly declares that it has stated claims upon which relief can be granted and stands on the strength of its pleadings. That WeInfuse only makes a "request" to amend if the court believes otherwise indicates that it has nothing to add to its pleadings. The court, therefore, concludes that WeInfuse has pleaded its "best case" and will not allow it an opportunity to further amend its pleadings. *See Schiller v. Physicians Resource Grp., Inc.,* 342 F.3d 563, 567 (5th Cir. 2003). Allowing WeInfuse to further amend will unnecessarily delay resolution of this action.

**Memorandum Opinion and Order – Page 19**

Accordingly, all of the foregoing considerations weigh against granting Plaintiff's nebulous request for leave to amend, and the court will not allow WeInfuse another opportunity to amend its pleadings.

## IX.      Conclusion

For the reasons explained, the court **grants in part and denies in part** Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 15) and Motion to Dismiss for Lack of Jurisdiction (Doc. 16). Specifically, the court **grants** Defendants' Motion to Dismiss with respect to Plaintiff's DTSA claim, Copyright Act claim, and the state tortious interference claims that are preempted by the Copyright Act; **denies** Defendant Rein's Motions to Dismiss (Docs. 32 and 33); **declines**, at this time, to dismiss Plaintiff's state law claims that remain, as all federal claims have not been dismissed; **grants** Plaintiff's Motion to Seal First Amended Complaint (Doc. 11); and **denies as moot** Defendants' Motion to Strike Plaintiff's Proposed Amended Complaint (Doc. 13), as the matter was resolved by stipulation between the parties. Accordingly, the court **orders** that Plaintiff's First Amended Complaint (Doc.11) **remain sealed** from public disclosure and that the partially redacted First Amended Complaint (Doc. 31) **shall not be filed under seal**. Plaintiff's state law claims under TUTSA remain against all Defendants; and **all** of Plaintiff's claims (federal and state) remain against Defendant Rein.

**It is so ordered** this 26th day of March, 2021.


Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 20**